**UNITED STATES of America,
Plaintiff,**

v.

**Bob ELLIS, Leo Holmes, J. F. Allen, Doyle Hankins, D. P. Morehead, and Richard Crawley, Defendants.**

**C. A. No. 5–493.**

United States District Court,
N. D. Texas,
Lubbock Division.

June 9, 1969.

---

Eldon B. Mahon, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for plaintiff.

Charles B. Jones, Evans, Pharr, Trout & Jones, Lubbock, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The United States seeks to recover cotton research and promotion assessments due the Cotton Board which were collected from various cotton producers by the Defendant Bob Ellis but which were not remitted by him to the Cotton Board. A default judgment will be entered against the Defendant Bob Ellis. The United States further seeks judgment against the remaining Defendants under Sections 191 and 192 of Title 31, United States Code.

All parties have agreed in open court that the matters in controversy would be submitted to the Court on stipulated facts and briefs, and such stipulations and briefs have been filed with the Court.

The stipulations are here adopted, together with the other matters set forth in this opinion, as the findings of fact in this case. This opinion will constitute the conclusions of law in support of the judgment to be entered as indicated herein.

Briefly stated, the facts in this case are as follows:

During the fall of 1967, Bob Ellis purchased cotton from various cotton producers and paid for the cotton by checks drawn on the Bob Ellis Cotton Account. At the time of these purchases, Ellis was acting as a collecting handler for the Cotton Board, an agency of the United States Government, and collected $8,886.00 in cotton research and promotion assessments from the cotton producers at the rate of one dollar per bale of cotton. Ellis failed to remit to the Cotton Board the assessments he collected and became indebted to the Cotton Board in the sum of $8,886.00.

Ellis was unable to market the cotton he purchased and could not honor the cotton purchase checks which he had given the producers. The checks outstanding amounted to about $500,000.00 in excess of the funds in his cotton account, and in January, 1968, Ellis was unable to meet his financial obligations as they came due.

In mid-January, Ellis entered into a transaction in an attempt to satisfy his creditors in various cotton transactions. Ellis, by this agreement, conveyed cotton warehouse receipts representing 3,623 bales of cotton to the First National Bank of Seagraves, Texas as security for an advancement of $342,000.00 by the bank. This advancement was deposited in an escrow account which was under the supervision and control of a Banker's Committee. Further, according to the agreement, after the bank had placed the $342,000.00 in the escrow account, some of the cotton producers advanced the sum of $146,483.77 to the Committee and that sum was deposited in the escrow account. It was agreed that these two advancements were to be used to pay the checks given by Ellis to the producers for their cotton and to pay any expenses incurred

in procuring the cotton. Both the bank's and the producers' advancements were secured by liens on the cotton warehouse receipts, the producers' lien being expressly subordinated to the bank's first lien.

Ellis himself agreed to and did place in the escrow account the sum of $24,750.00 which represented the proceeds from the sale of 225 shares of his stock in the First National Bank of Seagraves, Texas. Ellis also placed in the escrow account $8,500.00 which he had received in repayment of some advances which he had made to several producers.

In addition to its security in the cotton warehouse receipts, the bank took an additional and separate security interest in 375 shares of Ellis' stock in the Seagraves Seed and Acid Delinting, Inc.

All of these transactions creating the fund in the escrow account took place on or about January 14, 1968.

On May 16 a substantial portion of the 3,623 bales of cotton was sold and the bank was paid in full for its advancement of $342,000.00. Thereafter, on May 20, the bank sold the 375 shares of Ellis' Delinting stock which had been pledged to the bank, and the $7,500.00 from the sale was deposited in the escrow account. Subsequently, the producers who had advanced money to the escrow account were paid pro rata fifty per cent of their individual advances. The expenses incurred in the formation of the escrow account and incurred in the sale of the cotton had been paid throughout the period as they became due. At the time of the filing of this suit, and at the present time, a sum of $11,136.16 remains in the escrow account.

The United States asserts that it has a priority under Section 191 of Title 31, United States Code, for payment of the $8,886.00 debt owed by Ellis to the United States and that its priority is to be satisfied from the fund of $11,136.16 remaining in the escrow account. In the alternative, the Government asserts that if its priority is not payable out of the

fund remaining in the escrow account, then the remaining Defendants, members of the Committee which administered the escrow account, are personally liable to the Government to the extent of the $8,886.00 under Section 192 of Title 31, United States Code.

The applicable portion of Section 191 provides in part as follows:

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, * * *."

The Defendants argue that the January 14 transaction was merely a loan-mortgage transaction whereby they obtained a security interest in the fund in the escrow account and in the cotton warehouse receipts and that such transaction does not constitute a voluntary assignment or an act of bankruptcy within the terms of Section 191. They further argue that the priority established by Section 191 is not a lien and cannot supercede or overcome their contractual lien against the fund.

It is stipulated between the parties that at the time of the January transaction Bob Ellis was unable to meet his financial obligations as they became due. Furthermore, the Court finds that the transaction of January 14 was a voluntary assignment within the terms of Section 191 to the extent of the two cash contributions of $8,500.00 and $24,750.00 to the escrow account made by Bob Ellis. Therefore, the United States has a priority for payment from the fund created by Bob Ellis' assignment to the escrow account of the sums of $8,500.00 and $24,750.00.

The January transaction was a hybrid transaction. In respect to the $342,000.00 advanced by the bank and the $146,483.77 advanced by the producers, the transaction was a loan-mortgage

transaction. The parties have stipulated that these advances were secured by the cotton warehouse receipts; however, nowhere is it indicated that the bank and the producers had a security interest in the funds advanced by Ellis or a security interest in the escrow account itself.

That part of the January transaction whereby Bob Ellis contributed or advanced sums of $8,500.00 and $24,750.00 to the fund in the escrow account was a voluntary assignment within the terms of Section 191. These funds contributed by Ellis were his own unencumbered property and neither the bank nor the producers had any lien or security interest in those funds prior to their deposit in the escrow account. And, as stated before, neither the bank nor the producers had a lien or security interest in the escrow account itself. Although the parties have stipulated that they intended that the advances by the bank and by the producers were contingent upon there being sufficient money in the escrow account to pay for the cotton and although it appears that the funds contributed by Ellis were thus required to make up sufficient funds to cover the $502,000.00 in outstanding checks, the agreement between the parties did not create either expressly or impliedly, a lien or security interest in the funds Ellis contributed. Thus as to the funds contributed by Ellis himself, the bank and the producers had no greater right or interest than that of the government, that is, as general creditors of Bob Ellis.

Therefore, the United States is entitled to a priority of payment under Section 191 out of the remainder of the fund in the escrow account and judgment will be so entered.

Since sufficient funds remain in the escrow account to pay the claim of the United States, the Court finds it unnecessary to determine the issue concerning the personal liability under Section 192 of the members of the Committee which administered the escrow account and unnecessary to determine the issue

of the date of notice of the claim of the United States.

Accordingly, judgment will be entered for the United States Government, Plaintiff herein, for the amount sued upon and to be paid out of the funds remaining on hand in the possession of the Banker's Committee, and such judgment shall be against the Defendant Ellis personally and against the Defendants comprising the Banker's Committee in their capacity as trustees and directing them to pay such amount in accordance with this judgment.